**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, in its capacity as Administrative Agent,<br><br>      *Plaintiff*,<br><br>  v.<br><br>TELESAT CANADA and TELESAT LEO CANHOLD CORPORATION,<br><br>      *Defendants*. | No. 1:26-cv-01346 (VSB) (SLC)<br><br>**STIPULATION AND [PROPOSED] ORDER REGARDING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

Pursuant to Federal Rule of Civil Procedure 26, after conferring on these matters, Plaintiff Wilmington Savings Fund Society, FSB and Defendants Telesat Canada and Telesat LEO CanHold Corporation hereby stipulate and agree, by and through their undersigned counsel, that the following Discovery Plan For The Production Of Documents And Electronically Stored Information ("Discovery Plan") shall govern the production of documents, testimony, exhibits, electronically stored information ("ESI"), and any other materials or information (including any abstract, any copies, summaries, or derivations thereof) (collectively, "Documents") produced by the Parties (as defined below) during discovery in the above-captioned action ("Action") as of the execution date of this Discovery Plan:

## I.    PARTIES' AGREED-TO TERMS

### A.    DEFINITIONS

1.    As used herein, this Discovery Plan shall refer to Plaintiff and Defendants collectively as the "Parties" and individually as a "Party."

2.    As used herein, the Party requesting production of Documents shall be referred to as the "Requesting Party" and the Party producing Documents in response to such requests shall be referred to as the "Producing Party."

3.    As used herein, the term "Non-Party" means any person or entity that is not a Party to the Action and will be requested to produce Documents, either voluntarily or in response to a subpoena.

### B.    GENERAL TERMS

1.    This Discovery Plan shall govern the production of Documents, as described in Federal Rules of Civil Procedure 26, 33, and 34.

2.    The provisions set forth herein shall govern the production of Documents only by the Parties and their affiliates, though Non-Parties are encouraged to adhere to them.  The Parties agree to request that any production of Documents by a Non-Party complies with the terms of this Discovery Plan.

3.    Nothing in this Discovery Plan shall supersede the provisions of any subsequent stipulated protective order.

4.     Nothing in this Discovery Plan shall be construed to alter the Producing Party's rights or otherwise to, for example, withhold production of Documents because the source of the Documents is not reasonably accessible or its production would be unduly burdensome or duplicative.

5.     By agreeing to this Discovery Plan, the Parties do not admit that any Documents produced under its terms are relevant or admissible in this Action or in any other litigation.

6.     This Discovery Plan does not establish any agreement as to either the appropriate temporal or subject matter scope of discovery in the Action.

7.     All Parties reserve all rights under applicable law for matters relating to the production of Documents that are not specifically addressed in this Discovery Plan, including the right to object to production of any Documents.  Nothing in this Discovery Plan shall be construed to affect in any way the rights of any Party to object to the admissibility of any materials into evidence at the trial of this Action.

8.     All Documents, including the procedure for clawback of any Documents, shall be governed by any confidentiality, protective, and/or clawback orders, or mutual stipulation thereof, entered in this Action.  Responsive documents in TIFF format will be stamped with the appropriate confidentiality designation in accordance with the confidentiality order in this Action.  Each document produced in native format will have its confidentiality designation reflected on the endorsement on the bottom left-hand corner of the corresponding TIFF image slipsheet.

9.     The Parties will take reasonable efforts to ensure that all Documents they produce are decrypted, although media on which the Parties produce Documents may be encrypted for security purposes provided that appropriate password information is provided to all Parties to which such media are produced.  The Parties will make reasonable efforts to ensure that any productions made are free from malware and provided on encrypted media or transmitted via a secure file transfer system.

10.    This Discovery Plan shall not apply to Documents that either Party has already produced prior to execution of this Discovery Plan.

11.    Nothing in this Discovery Plan shall be interpreted to require the disclosure of any irrelevant information or relevant Documents that a Party contends are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege, protection, or immunity, nor shall this Discovery Plan require the production of Documents that are not discoverable under applicable law.  Nothing in this Discovery Plan, including any production of Documents under this Discovery Plan, shall constitute a waiver by any Party of any claim of privilege or other protection

2

from discovery.  No production of any Documents that the Producing Party contends is attorney-client privileged or protected by the work-product doctrine shall constitute a waiver of that privilege or protection, and all procedures in any confidentiality and protective orders entered in this Action shall be followed with respect to such Documents.  The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents.

12.   The Parties shall not redact any portion of an otherwise relevant Document on the basis that specific content is irrelevant to the claims or defenses at issue in this matter.

13.   As necessary, prior to filing any motion with or seeking the intervention of the court, the Parties agree to meet and confer as to discovery of Documents, to exchange information regarding issues associated with any production of Documents, and to resolve any procedures or disputes that arise under this Discovery Plan.  If a Party objects to any actions taken by another Party, the objecting Party shall state the specific objection in a letter or e-mail to counsel for the opposing Party or Parties.  Any practice or procedures set forth herein may be varied by written agreement of the Parties.

14.   All notices, requests, and demands to or upon any of the Parties under this Discovery Plan shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when (i) for delivery by mail or courier, when delivered, or three (3) business days after being deposited in the mail, postage prepaid, whichever is soonest; or (ii) for delivery by facsimile or e-mail, when received, addressed as follows, or to such other address as may be hereafter indicated by any Party:

a.   For Plaintiff:

Andrew J. Ehrlich
Brian S. Hermann
William A. Clareman
Joseph M. Graham
Paul A. Paterson
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
bhermann@paulweiss.com
wclareman@paulweiss.com
jgraham@paulweiss.com
ppaterson@paulweiss.com

3

b.    For Defendants:

Joshua Greenblatt, P.C.
Jeffrey R. Goldfine, P.C.
Kaitlin P. Sheehan
KIRKLAND & ELLIS LLP
601 Lexington Avenue, New York, NY 10022
(212) 446-4800
josh.greenblatt@kirkland.com
jeffrey.goldfine@kirkland.com
kaitlin.sheehan@kirkland.com

Any of the Parties may change its address and transmission numbers for Notices by providing Notice in the manner set forth in this Paragraph.

15.    The Parties agree to be bound by the terms of this Discovery Plan as of the date counsel for all Parties execute this Discovery Plan.

## C.    SCOPE OF DISCOVERY & PRESERVATION

1.    The Parties agree that the allowable scope of discovery is all Documents that are relevant, non-privileged, and proportional to the needs of the case.

2.    The Parties agree that only unique, non-duplicative sources of relevant Documents need to be preserved.

3.    Consistent with the Parties' obligations under the Federal Rules of Civil Procedure, the Parties will meet and confer regarding any issues involving preservation, such as, for example, relating to categories or sources of information that are not reasonably accessible or cannot reasonably be preserved because of undue burden or costs as well as categories or sources of responsive information subject to data privacy or protection laws, or relevance considering the proportionality factors in Federal Rule of Civil Procedure 26(b)(1).

4.    The Parties agree to meet and confer in an attempt to reach agreement on the scope of discovery as it relates to search parameters designed to locate relevant non-privileged information, including but not limited to:  data sources; date ranges; file types; custodians; and search terms.

## D.    PROCESSES & TECHNOLOGY

1.    The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant Documents.  The Parties further agree that each Producing Party is best situated to evaluate and utilize the procedures, methodologies, and technologies appropriate to identify, review, and produce its own Documents.

2.    While this Discovery Plan is intended to address the majority of Documents and data sources handled in this matter, there may be situations where the Parties come into contact with more complex, non-traditional or legacy data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, mobile device apps, and modern cloud sources. In the event such data sources are relevant, the Parties agree to take reasonable efforts to appropriately address the complexities introduced by such ESI, including, when appropriate, to meet and confer regarding relevant production format.

3.    As referenced herein, "hyperlinks" refers to documents or information sent or referenced via links (*e.g.*, SharePoint, Google Drive, etc.) that are contained within an email, message, chat, or other document. The Parties agree to meet and confer by Friday, June 26, 2026 to discuss the Parties' collection, review and production obligations concerning hyperlinked documents.

### E.    <u>PRODUCTION FORMAT</u>

1.    See Exhibit A attached herein for the Parties' agreed-upon production format.

### F.    <u>PRIVILEGE LOG</u>

1.    The Parties agree to meet and confer by Friday, August 14, 2026 (one month prior to the deadline for Substantial Completion of Document Productions) to discuss the format of privilege logs.

### G.    <u>NON-PARTY DOCUMENTS</u>

1.    A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Discovery Plan with the subpoena and state that the Parties to the litigation have requested that Non-Parties produce Documents in accordance with the specifications set forth herein.

2.    The Issuing Party is responsible for producing any Documents obtained under a subpoena to all other Parties.

3.    If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process such hard-copy documents or native files in accordance with the provisions of this Discovery Plan and then produce the processed hard-copy documents or native files to all other Parties.

4.    However, any Documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such Documents are received by the Issuing Party.

a. If the Issuing Party subsequently processes any such Documents, the Issuing Party will produce those processed Documents to all other Parties.

5. If the Non-Party production is not Bates-stamped, the Issuing Party will endorse the Non-Party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

## H. OTHER

1. In scanning paper documents, distinct documents should not be merged into a single record and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents (*e.g.*, a binder containing several separate documents behind numbered tabs), the physical organizational box, divider, and any labels and the documents that follow should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

2. To the extent reasonably feasible, the Parties shall produce responsive non-privileged text messages, chats, and instant messages in 24-hour increments. This means that, where there is a responsive message in a communication between certain parties, the Parties shall produce communications between those parties in that communication thread for the relevant 24-hour day in which the message was sent.

3. The Parties agree that the Producing Party will create and produce optical character recognition (OCR) or other upgrades of paper documents or non-text searchable electronic images.

4. This Discovery Plan shall have no effect on any Producing Party's right to seek reimbursement for costs associated with collection, review, or production of Documents.

5. Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Non-Parties to object to a subpoena.

6. Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

## II. MODIFICATION

A. This Stipulation may be modified by a Stipulated Order of the Parties or by the court for good cause shown.

**IT IS SO STIPULATED**.

Date: April 17, 2026

Respectfully Submitted,

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**

**KIRKLAND & ELLIS LLP**

*/s/ William A. Clareman*
William A. Clareman
Andrew J. Ehrlich
Brian S. Hermann
Joseph M. Graham
Paul A. Paterson
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
wclareman@paulweiss.com
aehrlich@paulweiss.com
bhermann@paulweiss.com
jgraham@paulweiss.com
ppaterson@paulweiss.com

*/s/ Joshua Greenblatt*
Joshua Greenblatt, P.C.
Jeffrey R. Goldfine, P.C.
Kaitlin P. Sheehan
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
josh.greenblatt@kirkland.com
jeffrey.goldfine@kirkland.com
kaitlin.sheehan@kirkland.com

*Counsel for Defendants*

*Counsel for Plaintiff*

Dated: ___April 20, 2026___

SO ORDERED

_____
SARAH L. CAVE

United States Magistrate Judge

7

**Exhibit A**

**Document Production Format**

   I.   Overview

       A.  All documents shall be produced as Bates-stamped tagged image file format ("TIFF") images along with an image load/cross reference file, a data load file with fielded metadata, and document-level extracted text for electronically stored information ("ESI") or optical character recognition ("OCR") text for scanned hard copy documents and non-searchable ESI. Details regarding requirements, including files to be delivered in native format, are below.

   II.  TIFF Image Requirements

       A.  All documents shall be produced as TIFF images in 300x300 dpi Group IV single-page monochrome format.

       B.  All such images shall be sequentially Bates-stamped using a consistent length with leading zeros in the number. The format of the Bates numbers shall not change across productions.

       C.  Images shall include, to the extent reasonably feasible, the following content where present, provided that nothing in this provision requires a party to provide content that is subject to any applicable privileges or protections. To the extent a Producing Party deems it not reasonably feasible to provide the following content, the Producing Party shall notify the Requesting Party for what categories of documents or document types it is not feasible for each production, and the Parties agree to meet and confer concerning any disputes arising therefrom:

          1.  For word processing files (*e.g.,* Microsoft Word) – Comments and "track changes" (and similar in-line editing).

          2.  For spreadsheet files (*e.g.*, Microsoft Excel), to the extent they are not produced natively – Hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing).

          3.  For presentation files (*e.g.*, Microsoft PowerPoint) – Speaker notes and comments.

       D.  Reasonable care shall be taken not to degrade the legibility of documents during the imaging process. If legibility is found to have been degraded, the Requesting Party may make reasonable requests for re-production of these documents.

   III.  Native Format Requirements

       A.  Spreadsheet files

1. Spreadsheet files (*e.g.*, Microsoft Excel) shall be provided in native format.

2. In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

3. When redaction is necessary, the Producing Party shall have the option to produce a redacted TIFF image version or a redacted version of the native document, so long as the Producing Party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the Requesting Party in the redaction field.  The parties reserve the right to request access to the native format versions of such files.

B. Multimedia files

1. Multimedia files (*e.g.*, audio or video files) shall be provided in native format.

2. In lieu of a TIFF image version of each multimedia file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

3. The parties reserve the right to edit multimedia files using industry standard methods if redaction of such files is deemed necessary.

C. Other files

1. In limited circumstances, it may be necessary to obtain or view the native format versions of files, including color documents/images and dynamic files, such as databases.  The parties reserve the right to reasonably request access to the native format versions of such files and/or an image format that supports viewing color documents.

IV. Most Inclusive Email Productions

A. Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files.  A most inclusive email thread is one that contains all the prior or lesser-included emails, including attachments, for that branch of the email thread.  The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting.  Threading is therefore permitted, though not required.

1. For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be

produced.  If the later in time message contains different text (such as where the later message adds in-line comments to the body of the earlier message) or does not include an attachment that was part of the earlier message, then the earlier message must be produced.

2. To the extent that an email thread contains privileged communications, such communications can be redacted.  If an email thread contains both responsive, privileged communications and responsive, non-privileged communications, the entire email thread cannot be withheld as privileged.

V.   Image Load/Cross Reference File Requirements

A.   A single-page image load/cross-reference file shall be provided with each production.

B.   The file should use the Concordance Image Viewer (.OPT) format, as in the sample below.  Note, the volume label information ("MSC001" in the sample .opt file) is optional:

*Sample Concordance Image Viewer .opt file:*
MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3
MSC000002,MSC001,MSC\0000\00000002.TIF,,,,
MSC000003,MSC001,MSC\0000\00000003.TIF,,,,
MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2
MSC000005,MSC001,MSC\0000\00000005.TIF,,,,

VI.   Extracted Text/OCR Requirements

A.   Extracted text and/or OCR text shall be provided for all documents as separate, document-level text files; extracted text and/or OCR text shall not be embedded in the .DAT file (as defined below).

B.   Document-level text file names shall consist of the beginning Bates number information of the document.

C.   If a document is provided in native format with a single-page placeholder TIFF image (*e.g.,* spreadsheet files), the text file shall contain the full extracted text of the native file.

D.   OCR text shall be provided for all redacted documents in lieu of extracted text.

E.   With respect to produced text files, all text will be Unicode-compliant (UTF-8) to the extent practical. If such conversion is unduly burdensome or renders the document unusable, the Producing Party may produce the document in any reasonably usable form as may be agreed upon by the respective Parties.

VII.    Data Load File Requirements

A.    A data load file shall be provided with each production.

B.    The file shall be a Concordance-loadable data file ("\.DAT" file) and contain Bates-stamp and metadata information as detailed below.  No Party shall be required to manually populate any fields that do not exist as a document is maintained in the ordinary course of business.

C.    The delimiters and qualifiers to be used in the .DAT file are:

*Record delimiter:* Windows newline/Hard return (ASCII 10 followed by ASCII 13)
*Field delimiter:*   (ASCII 20)
*Multi-value delimiter:*   Semicolon ; (ASCII 59)
*Text qualifier:*   Small thorn þ (ASCII 254)

D.    With respect to .DAT files, the specifications herein address ANSI text-based productions.  Unicode text-based productions shall be provided for productions containing non-English language documents.

E.    The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field. If necessary, the Parties shall meet and confer to determine whether different or additional metadata will be needed for text messages, chats, and instant messages:

| Field | Comments | Document Types |
|---|---|---|
| BegBates | Beginning Bates number. | All. |
| EndBates | Ending Bates number. | All. |
| BegRange | Bates number of first page of family range (*e.g.,* first page of an email). | All. |
| EndRange | Bates number of last page of family range (*e.g.,* last page of last attachment to an email). | All. |
| PageCount | Number of TIFF image pages in the produced document. | All. |
| FileExtension | File extension of the original document (*e.g.*, .msg, .docx, .jpg). | All. |
| FileSize | File size of the original document.  Format: bytes. | All. |
| Title | Title of the original document. | Loose files and attachments. |
| Custodian | Custodian full name.  Format: LASTNAME, FIRSTNAME. | All. |
| AllCustodian | Full name of all custodians for whom the document is being produced.  Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |

11

| Field | Comments | Document Types |
|---|---|---|
| Author | Author of document from available metadata. | Loose files and attachments. |
| LastSavedBy | Last Saved By field value extracted from metadata of a native file. | Loose files and attachments. |
| Company | Company field extracted from the metadata of a native file. | Loose files and attachments. |
| From | Message author. | Email / Chat / Instant Message |
| To | Message addressee(s). | Email / Chat / Instant Message |
| CC | Email addressee(s), carbon copy. | Email only. |
| BCC | Email addressee(s), blind carbon copy. | Email only. |
| Subject | Email subject. | Email only. |
| DateCreated | File creation date.  Format: MM/DD/YYYY. | All. |
| TimeCreated | File creation time.  Format: HH:MM:SS AM/PM | All. |
| DateModified | File modification date.  Format: MM/DD/YYYY. | All. |
| TimeModified | File modification time.  Format: HH:MM:SS AM/PM | All. |
| DateSent | Message sent date.  Format: MM/DD/YYYY. | Email / Chat / Instant Message |
| TimeSent | Message sent time.  HH:MM:SS AM/PM. | Email / Chat / Instant Message |
| DateReceived | Message received date.  MM/DD/YYYY. | Email / Chat / Instant Message |
| TimeReceived | Message received time.  HH:MM:SS AM/PM. | Email / Chat / Instant Message |
| DateAccessed | Date document was last accessed. | All. |
| TimeAccessed | Time document was last accessed. | All. |
| MeetingStartDate | Start date of calendar appointment.  Format: MM/DD/YYYY | Calendar items only. |
| MeetingStartTime | Start time of calendar appointment.  Format: HH:MM:SS AM/PM | Calendar items only. |
| MeetingEndDate | End date of calendar appointment.  Format: MM/DD/YYYY | Calendar items only. |
| MeetingEndTime | End time of calendar appointment.  Format: HH:MM:SS AM/PM | Calendar items only. |
| TimeZone | The time zone in which files were standardized during processing (*e.g.*, GMT). | All. |
| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (*e.g.*, | Email only. |

12

| Field | Comments | Document Types |
|---|---|---|
| | <0E6648D558F338179524D555@m1p.contoso.net). | |
| ConversationIndex | Email thread identification. | Email only. |
| Importance | Email flag indicating priority level set for message. | Email only. |
| Sensitivity | Sensitivity field from email messages. | Email only. |
| FileName | Name of file as maintained in the ordinary course of business. | Loose files and attachments. |
| FilePath | Original path to the file or email message. | All. |
| AllFilePaths | For globally and within custodian de-duplicated productions.  Folder paths to this document's duplicates and the original path.  Each path will contain the associated custodian. | All. |
| HiddenContent | Denotes if file contains hidden content. Format: Yes/No value. | Loose files and attachments. |
| MD5Hash | Unique file identifier. | All. |
| Confidentiality | For identifying documents designated by their determined level of confidentiality. | All. |
| Redacted | For identifying documents that have redactions. | All |
| TextPath | The production deliverable path to the extracted text or OCR for the document, including the file name. | All. |
| NativePath | The production deliverable path to the native-format file for the document, including the file name (if a native-format file is provided). | Loose files and attachments. |

F.    The parties shall de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching.  Email attachments shall not be eliminated from the parent email.  Hard copy documents shall not be eliminated as duplicates of responsive ESI.

G.    In globally de-duped, incremental productions, there will be instances when production of documents from additional custodians will include documents previously produced.  A Custodian Append overlay load file using the load file format described above shall be provided with updated AllCustodian and AllFilePaths fields; BegBates and EndBates fields may be used as the unique identifiers.

VIII.    Miscellaneous

A.    All document family relationships that have been maintained in the ordinary course of business shall be produced together and children files should follow parent files in sequential Bates number order.

13

B. Common system and program files as defined by the NIST library need not be processed, reviewed, or produced. The Parties may come to agreement on any additional file extensions or file types that need not be collected, reviewed, or produced.

C. The parties shall undertake reasonable efforts to extract embedded items from the parent document with family relationship intact.

D. Productions shall be provided using industry standard encryption software or hardware. Any electronic transmission of produced materials must be done via a secure file transfer system.

E. If particular documents warrant a different format (*e.g.*, production of color images instead of black and white), the parties shall cooperate to arrange for the mutually acceptable production of such documents.

F. The parties agree not to knowingly degrade the searchability of documents as part of the document production process. For example, extracted text should not be replaced by OCR text except where appropriate (*e.g.*, OCR for redacted documents).

G. Redacted documents may have certain metadata fields withheld from production. The parties shall cooperate to create a list of metadata fields which may be produced for these documents.

H. To the extent that information produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary or third-party software, the Parties agree to meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format.

I. The Parties agree that to the extent that potentially relevant and proportional data is contained in databases, or other sources of structured data, they will meet-and-confer regarding how best to identify and produce information from those sources. If it is determined after meeting and conferring with the Requesting Party that any such discoverable data can be produced in an already existing and reasonably available report based on agreement, then the Producing Party may collect and produce the data in that report format. If existing report forms do not reasonably provide the requested information, the Parties will meet-and-confer to agree upon an acceptable format for production.

J. All documents shall be processed so as to normalize the time zone.