**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, in its capacity as Administrative Agent,<br><br>                   Plaintiff,<br><br>    v.<br><br>TELESAT GEO INC. (f/k/a Telesat Canada) and TELESAT LEO CANHOLD CORPORATION,<br><br><br>                 Defendants. | Case No. 1:26-cv-01346-VSB-SLC<br><br>**ECF Case**<br><br>**Oral Argument Requested** |

**DEFENDANTS TELESAT GEO INC. (F/K/A TELESAT CANADA) AND TELESAT LEO CANHOLD CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TEMPORARILY STAY COUNT II**

KIRKLAND & ELLIS LLP

Josh Greenblatt, P.C.
Jeffrey R. Goldfine, P.C.
Kaitlin P. Sheehan
601 Lexington Avenue
New York, NY 10022
(212) 446-4800 (telephone)
josh.greenblatt@kirkland.com
jeffrey.goldfine@kirkland.com
kaitlin.sheehan@kirkland.com

*Attorneys for Defendant Telesat GEO Inc. (f/k/a Telesat Canada) and Telesat LEO CanHold Corporation*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................. 1

I. INTERNATIONAL COMITY FAVORS DISMISSAL OR STAY OF COUNT II.......... 1

    A. Plaintiff Misstates the Applicable Standard............................................. 1

    B. Plaintiff's Assertion That It Will Not Prosecute the Ontario Action Does Not Defeat Parallelism. ....................................................................... 2

    C. Plaintiff Fails to Address the Totality of the Circumstances That Favors Dismissal of Count II. ........................................................................ 3

        1. Count II Raises Complex Questions of Canadian Law That Should Be Decided in Canada.................................................................. 4

        2. Plaintiff Concedes That Ontario Is an Adequate Forum for Count II. .......................................................................................... 5

        3. Canada, Not New York, Is the Jurisdiction Most Closely Connected to the Issues in Count II. ............................................. 5

        4. Judicial Economy Warrants Dismissal. ....................................... 6

        5. The Filing Order Is Immaterial. ................................................... 7

    D. The Forum Selection Clause Does Not Preclude International Comity. ................ 8

II. COUNT II SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLEAD IT WITH PARTICULARITY ........................................................ 9

    A. Plaintiff's Purported "Badges of Fraud" Are Insufficient. .................................. 10

    B. CanCo's Rule 9(b) Motion Is Not Barred by Rule 12(g)(2)................................. 13

CONCLUSION................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acuren Inspection, Inc. v. Aboyoun*,
2019 WL 3997044 (D. Conn. Aug. 23, 2019) ............................................................7

*Allstate Life Ins. Co. v. Linter Grp., Ltd.*,
994 F.2d 996 (2d Cir. 1993) ....................................................................................8

*In re AlphaStar Ins. Grp. Ltd.*,
383 B.R. 231 (Bankr. S.D.N.Y. 2008) ....................................................................10

*Anhui Aido Garment Co., Ltd. v. Stern*,
2025 WL 1663860 (S.D.N.Y. June 12, 2025) .........................................................11

*ArcelorMittal North America Holdings LLC v. Essar Global Fund Ltd.*,
2022 WL 4334665 (S.D.N.Y. Sept. 19, 2022) ..........................................................6

*Azima v. Dechert LLP*,
2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024) ..........................................................3

*Bugliotti v. Republic of Argentina*,
952 F.3d 410 (2d Cir. 2020) ................................................................................4, 5

*C.D.S., Inc. v. Zetler*,
198 F. Supp. 3d 323 (S.D.N.Y. 2016) .......................................................................8

*Carter v. Ralph Lauren Corp.*,
683 F. Supp. 3d 400 (S.D.N.Y. 2023) .......................................................................9

*Chiarella v. U.S.*,
445 U.S. 222 (1980) ...............................................................................................11

*Denny v. Barber*,
576 F.2d 465 (2d Cir. 1978) ...................................................................................12

*Drip Cap., Inc. v. JY Imports of NY Inc.*,
348 F.R.D. 536 (E.D.N.Y. 2025) ............................................................................11

*Gao v. Yang*,
2022 WL 2193290 (S.D.N.Y. June 17, 2022) .........................................................10

*In re IAC/InterActive Corp.*,
948 A.2d 471 (Del. Ch. 2008) ................................................................................11

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) .....................................................................................8

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..............................................................................................12

*Kingstown Capital Mgmt., L.P. v. Vitek*,
    2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)..............................................................3, 6, 7

*Kitaru Innovations Inc. v. Chandaria*,
    698 F. Supp. 2d 386 (S.D.N.Y. 2010)..................................................................................8

*Leighton v. Poltorak*,
    2018 WL 2338789 (S.D.N.Y. May 23, 2018) ....................................................................13

*Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*,
    896 F.3d 174 (2d Cir. 2018)................................................................................................4

*Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*,
    2015 WL 4940109 (S.D.N.Y. Aug. 6, 2015).......................................................................9

*Malin v. XL Cap. Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007)................................................................................12

*Malin v. XL Cap. Ltd.*,
    312 F. App'x 400 (2d Cir. 2009) .......................................................................................12

*Mexico Infrastructure Finance, LLC v. Corp. of Hamilton*,
    2019 WL 1206690 (S.D.N.Y. Mar. 14, 2019) ....................................................................9

*Monsoon Blockchain Storage, Inc. v. Magic Micro Co., Ltd.*,
    2024 WL 3466796 (S.D.N.Y. July 19, 2024) ......................................................................8

*Navitas LLC v. Health Matters America, Inc.*,
    2018 WL 1317348 (W.D.N.Y. Mar. 14, 2018).....................................................................3

*Northway Med. Ctr. Condo v. Hartford Fin. Servs. Grp., Inc.*,
    2022 WL 94884 (S.D.N.Y. Jan. 10, 2022) ..........................................................................2

*NovaSparks SA v. EnyxFPGA*,
    344 F. Supp. 3d 666 (S.D.N.Y. 2018)..................................................................................7

*Ole Media Mgmt., L.P. v. EMI April Music, Inc.*,
    2013 WL 2531277 (S.D.N.Y. June 10, 2013) ......................................................................8

*Oui Fin. LLC v. Dellar*,
    2013 WL 5568732 (S.D.N.Y. Oct. 9, 2013) ........................................................................8

*Petersen Energia Inversora S.A.U. v. Argentine Republic*,
    172 F.4th 120 (2d Cir. 2026) ...........................................................................................4, 5

iv

*In re Row NYC, LLC*,
　　2024 WL 61915 (Bankr. S.D.N.Y. Jan. 4, 2024)......................................................................13

*Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
　　466 F.3d 88 (2d Cir. 2006)......................................................................................................2, 3

*RTC Mortg. Tr. 1995-S/N1 v. Sopher*,
　　171 F. Supp. 2d 192 (S.D.N.Y. 2001).........................................................................................10

*SASOF III (A2) Aviation Ireland DAC v. Air Senegal S.A.*,
　　818 F. Supp. 3d 582 (S.D.N.Y. Jan. 30, 2026) .................................................................3, 6, 7

*Schenker A.G. v. Societe Air France*,
　　2016 WL 1465353 (E.D.N.Y. Apr. 14, 2016) ............................................................................8

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
　　528 F. Supp. 3d 219 (S.D.N.Y. 2021)........................................................................................12

*Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
　　49 F.4th 170 (2d Cir. 2022) ......................................................................................................12

*Shields v. Citytrust Bancorp, Inc.*,
　　25 F.3d 1124 (2d Cir. 1994)........................................................................................................9

*Sullivan v. Kodsi*,
　　373 F. Supp. 2d 302 (S.D.N.Y. 2005)........................................................................................13

*SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*,
　　2013 WL 5366373 (S.D.N.Y. Sept. 25, 2013)...........................................................................11

*Techno-Comp, Inc. v. Arcabascio*,
　　130 F. Supp. 3d 734 (E.D.N.Y. 2015) .......................................................................................10

*Tommy Lee Handbags Mfg. Ltd. v. 1948 Corp.*,
　　971 F. Supp. 2d 368 (S.D.N.Y. 2013)........................................................................................11

*In re Tribune Co. Fraudulent Conv. Litig.*,
　　2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) ...................................................................................9

*Trodale Holdings LLC v. Bristol Healthcare Invs. L.P.*,
　　2018 WL 2980325 (S.D.N.Y. June 14, 2018) ...........................................................................10

*U.S. Bank Trust Co., Nat'l Ass'n v. DISH DBS Corp.*,
　　2025 WL 2419978 (S.D.N.Y. Aug. 21, 2025)..............................................................11, 12, 13

*In re Vivaro Corp.*,
　　524 B.R. 536 (Bankr. S.D.N.Y. 2015)........................................................................................12

v

*Watson v. Riptide*,
    2012 WL 383946 (S.D.N.Y. Feb. 7, 2012)..............................................................................12

**Statutes**

Telesat Canada Reorganization and Divestiture Act, S.C. 1991, c. 52..........................................4

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................................................1, 9, 13

Fed. R. Civ. P. 12(b)(6)..................................................................................................................13

Fed. R. Civ. P. 12(c) ......................................................................................................................13

Fed. R. Civ. P. 12(g)(2)..................................................................................................................13

Fed. R. Civ. P. 12(h)(2)(B) ............................................................................................................13

**PRELIMINARY STATEMENT**

As shown in Plaintiff's Opposition,[1] Count II—an Ontario law fraudulent conveyance claim—is tailor-made for dismissal on comity grounds  Plaintiff asks this Court to adjudicate Canadian statutory claims concerning a Transaction negotiated, approved, and implemented entirely in Canada, and involving exclusively Canadian entities and assets, even though Plaintiff is simultaneously pursuing a parallel proceeding in Canada against the same parties arising from the same Transaction.  Plaintiff's Opposition does not confront these facts.  Instead, Plaintiff misstates the applicable comity standard and resorts to marginal arguments unsupported by the law and allegations in the Complaint.  The Court should reject these efforts.  Plaintiff's Ontario law claim belongs in Plaintiff's pending action ***in Ontario***.  Alternatively, Count II should be dismissed because the Complaint does not clear the hurdle of Rule 9(b).  Plaintiff argues that it has pled some "badges of fraud."  But the isolated badges cited in the Opposition are insufficient.  The Court should grant Defendants' Motion.

**ARGUMENT**

I.      **INTERNATIONAL COMITY FAVORS DISMISSAL OR STAY OF COUNT II**

   A.      **Plaintiff Misstates the Applicable Standard.**

As shown in the Motion, the Court should dismiss Count II under principles of international comity because Count II and the Ontario Action are parallel and the totality of the circumstances warrant abstention. Mot. 10-21.  Plaintiff's Opposition does not counter the core Canadian nature of the dispute in Count II.  Instead, Plaintiff manufactures a threshold step that does not exist.

---

[1]      As used herein "Opposition" or "Opp." refers to Plaintiff's Consolidated Response in Opposition to Defendants' Motions to Dismiss (Dkt. No. 53).  Capitalized terms have the same meanings as in Defendants' Motion to Dismiss or Temporarily Stay Count II (Dkt. No. 30) and its accompanying Memorandum of Law (Dkt. No. 31) (the "Motion" or "Mot.").  "PJ Mot." refers to CanCo's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 27) and its accompanying Memorandum of Law (Dkt. No. 28).

Opp. 29-31.  Citing a passing reference in *Royal & Sun Alliance Insurance Co. of Canada v. Century International Arms, Inc.*, 466 F.3d 88 (2d Cir. 2006), Plaintiff insists courts must first evaluate "the principles upon which international comity is based, which include proper respect for foreign proceedings, fairness, and judicial efficiency" before weighing the comity factors. Opp. 29.  Not true.  Courts in this district consider international comity based upon a two-step framework—parallelism and the totality of circumstances.  Mot. 8-9.  And the Second Circuit in *Royal* has made clear that principles like "proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency" are ***already reflected*** in the "totality of the circumstances" factors.  *Royal*, 466 F.3d at 93-94.  Nowhere in *Royal* or otherwise has a court held that the comity analysis requires a first step in which the court must consider the principles upon which international comity is based.  *Id.*  This Court should reject Plaintiff's attempt to misstate the applicable legal standard.

> **B.**     **Plaintiff's Assertion That It Will Not Prosecute the Ontario Action Does Not Defeat Parallelism.**

Plaintiff effectively concedes the first step of the comity analysis.  The Opposition does not dispute that the Ontario Action and Count II involve substantially the same issues and parties. Opp. 29-30, 37-38.  Instead, in an effort to defeat parallelism, Plaintiff floats two failing arguments.

***First***, Plaintiff claims "there is no true parallel litigation" because the Ontario Action "has been effectively stayed."  Opp. 11, 29.  This is false.  Plaintiff has not sought a stay, nor has the Ontario court entered one.  Plaintiff points only to an oral statement its Canadian counsel made to Defendants' Canadian counsel in February 2026, that "Plaintiff was not pressing forward with the [Ontario] Action."  Dkt. No. 55 ¶8 (cited in Opp. 11).  Plaintiff's resort to a factual assertion outside of the allegations in the Complaint is improper.  *Northway Med. Ctr. Condo v. Hartford Fin. Servs. Grp., Inc.*, 2022 WL 94884, at *3 (S.D.N.Y. Jan. 10, 2022).  In any event, parallelism applies to

2

any "pending litigation in a foreign court," *Royal*, 466 F.3d at 93, and the Ontario Action remains pending regardless of whether a stay is entered.  Parallelism is established here because the pending proceedings are still directed at the same underlying alleged wrong.  *Kingstown Capital Mgmt., L.P. v. Vitek*, 2020 WL 5350492, at \*5-6 (S.D.N.Y. Sept. 4, 2020).

Plaintiff's cited authorities are inapposite.  *Azima v. Dechert LLP*, 2024 WL 4665106, at \*42 (S.D.N.Y. Sept. 26, 2024), is unhelpful because unlike there, the Ontario Action *is* ongoing; it has not been settled.  In *Navitas LLC v. Health Matters America, Inc.*, 2018 WL 1317348, at \*23 (W.D.N.Y. Mar. 14, 2018), the court found the actions were *not* parallel because, unlike here, the plaintiff in the New York action was absent from the Canadian proceedings, rendering that forum incapable of fully resolving the dispute.

***Second***, Plaintiff contends the similarity between the Ontario Action and Count II "deserves no weight."  Opp. 37.  Wrong.  Similarity is a well-recognized factor that courts repeatedly cite as a basis for granting comity.  *See, e.g.*, *SASOF III (A2) Aviation Ireland DAC v. Air Senegal S.A.*, 818 F. Supp. 3d 582, 589-90 (S.D.N.Y. Jan. 30, 2026) (substantial similarity of issues and parties weighs in favor of abstention).[2]

### C.     Plaintiff Fails to Address the Totality of the Circumstances That Favors Dismissal of Count II.

The second step in the international comity factors requires the Court to examine the totality of the circumstances.  That totality supports dismissal of Count II.  *See* Mot. 13.  Plaintiff's assertion that this case presents "routine" parallel litigation is wrong.  Opp. 4, 28.  Count II presents a uniquely strong case for comity.  It asks this Court to resolve a first-impression question

---

[2]     Plaintiff relies on *Royal* and *Azima* to contradict this well-established principle, *see* Opp. 37-38, but these cases stated only that the existence of an overlapping parallel action, "by itself" is not sufficient to justify abstention absent "additional circumstances."  *Royal*, 466 F.3d at 95; *Azima*, 2024 WL 4665106, at \*42.

regarding a company-specific statute enacted by the Canadian Parliament; it can be adjudicated in an adequate Ontario forum together with the inextricably related oppression claim Plaintiff brought in that forum against the same parties here; it concerns a Canadian transaction among Canadian corporate entities; and abstention here would not be inconvenient to Plaintiff. Mot. 7-21. Plaintiff does not engage with these considerations.

### 1.    Count II Raises Complex Questions of Canadian Law That Should Be Decided in Canada.

Plaintiff contends that deference to Canadian courts is not warranted because "the mere fact of foreign law" is not "exceptional." Opp. 35. This misses the point. New York courts can apply Ontario's *Fraudulent Conveyance Act*. But deference is warranted here because Count II raises nuanced questions of statutory interpretation under a legal system that takes a distinctive approach to construing legislation. Mot. 13-14. The scope and effect of Section 8(2) of the *Telesat Act*—a company-specific statute insulating Telesat Canada from claims under Canadian solvency laws—are necessary to resolving the legal issues relevant to Count II, but have not been interpreted by Canadian courts before. This matter, closely tied to Canada's sovereign interests, should be resolved by a Canadian court. *Id*. Plaintiff's cases make this clear. *See Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 191 (2d Cir. 2018) (denying comity in favor of Panama proceedings because, among other things, judicial economy instead favored adjudicating the dispute in New York, the forum "at home with" the law governing the dispute).

Plaintiff's attempts to analogize to *Bugliotti* and *Petersen* (Opp. 35-37) fail. In *Bugliotti v. Republic of Argentina*, 952 F.3d 410, 415 & n.4 (2d Cir. 2020), the Second Circuit reversed a comity dismissal because the district court cited only the general "importance" of a foreign tax credit program and the sovereign's "greater interest," without finding specific justifications for abstention or weighing the entire set of factors. Defendants here present the "more developed

4

record" contemplated by the Second Circuit, making a strong showing that the totality of the circumstances weigh in favor of abstention, including sovereign interests and nuanced questions of Canadian statutory interpretation. *Id.*; *see* Mot. 10-21. *Petersen* is further afield. The Second Circuit did not hold that sovereign interests are irrelevant to the comity analysis; it simply "decline[d] to decide whether international comity concerns warranted abstention" because it resolved the dispute on the merits. *Petersen Energia Inversora S.A.U. v. Argentine Republic*, 172 F.4th 120, 133 (2d Cir. 2026).

### 2. Plaintiff Concedes That Ontario Is an Adequate Forum for Count II.

The Motion established that Ontario is an adequate forum to resolve Count II. Mot. 14-16. Plaintiff's Opposition does not argue otherwise. Opp. 11.

### 3. Canada, Not New York, Is the Jurisdiction Most Closely Connected to the Issues in Count II.

Plaintiff argues that dismissal of Count II would be improper here because "Count II has a strong connection to New York." Opp. 34. It does not. Canada is the jurisdiction most closely connected to Count II because the Transaction involved Canadian entities and was negotiated, approved, and implemented in Canada as part of a Canada-centered corporate reorganization. Mot. 16-18. Plaintiff does not dispute these facts. Instead, Plaintiff points to the Credit Agreement being governed by New York law, containing a New York forum selection clause, involving loans arranged in New York, and New York-based lenders (who are not a part of this litigation but instead represented by a Delaware-based agent). *See* Opp. 34-35. Those facts establish a connection ***to Count I***—the alleged breach of the Credit Agreement—***not to Count II***, which challenges under Ontario law the validity of the purely Canadian Transaction. Mot. 16-18. Moreover, Plaintiff's Ontario fraudulent conveyance claim turns on the intent of corporate actors acting on behalf of a Canadian company. *Id*. at 17.

5

Plaintiff's reliance on *Kingstown* is misplaced.  Opp. 35.  While the *Kingstown* court acknowledged New York's general interest in protecting its citizens from overseas fraud through domestic law claims, it abstained on international comity grounds because the ties to New York were tenuous, the events occurred abroad, and the case involved a foreign company and serious foreign corporate-law issues.  *Kingstown*, 2020 WL 5350492, at *6-7.  The case for abstention is even stronger here.  Count II is a foreign law claim, the Transaction took place abroad, and resolution requires addressing a question of first impression under Canadian law affecting a strategically important Canadian company.  Mot. 16-18; *see also SASOF*, 818 F. Supp. 3d at 589-91 (granting comity despite New York forum selection clause, because the defendant was Senegal's national carrier, relevant discovery was to occur in Senegal, and plaintiffs had already chosen to seize Senegalese courts).

The same is true of *ArcelorMittal North America Holdings LLC v. Essar Global Fund Ltd.*, 2022 WL 4334665, at *6-9 (S.D.N.Y. Sept. 19, 2022).  *See* Opp. 29.  There, the debtors had allegedly fraudulently conveyed assets to render their subsidiary judgment-proof, placed it into voluntary administration, and then initiated a potentially collusive proceeding in Mauritius to extinguish the debt while defying freezing and disclosure orders from foreign courts.  *ArcelorMittal*, 2022 WL 4334665, at *6-9.  No equivalent facts exist here.  In denying comity, the court stressed that the various proceedings initiated by the creditor were not parallel and emphasized the "meaningful connections" between the claims and New York as the plaintiff sought to vindicate a domestic judgment stemming from domestic business activity, and to attach assets located in New York.  *Id.* at *13, 21-25.  Those factors do not exist here.

### 4.    Judicial Economy Warrants Dismissal.

The Motion established that judicial economy would be furthered by dismissal of Count II because allowing Count II to proceed in this Court would force two courts to duplicate work and

6

expend resources on parallel disputes arising from a nearly identical record.  Mot. 18-19.  Plaintiff argues that "judicial efficiency is promoted by the New York Action proceeding first" because, in its view, the Court's findings on Count I are "informative" to both Count II and the oppression claim.  Opp. 30-31, 33-34.  Even so, it does not follow that it is more efficient for this Court to decide Count II.[3]

The only sensible sequence is straightforward: this Court decides the New York law contractual claims in Count I without becoming mired in the intent-focused issues under Ontario law that pervade Count II, and then the Ontario court adjudicates Count II and the Canadian law oppression claim together.  Mot. 11, 18-21.  That sequence avoids duplication of efforts in both forums, respects the Ontario court's role in deciding unsettled Canadian law issues, and faces no jurisdictional impediments.

### 5.      The Filing Order Is Immaterial.

Plaintiff attempts to salvage Count II, arguing that dismissal is inappropriate because the Ontario Action was filed "after" this case.  *See* Opp. 32-33.  This is meritless.  Both actions were filed on the same day at or about the same exact time.  The reason the time stamps are different on the two complaints is because of certain logistical steps that occur on the court-end of the filing system in the Ontario Action as compared to the New York action which obtains a time stamp almost instantly after filing.  The two actions were filed simultaneously.

---

[3]      Plaintiff argues that its proposed sequencing minimizes costs for Defendants by ensuring both actions will not proceed simultaneously.  Opp. 33.  That misses the point.  If Count II is not dismissed and the oppression claim later proceeds, efforts already undertaken here will be duplicated.  This weighs in favor of abstention.  Plaintiff's cases do not counsel otherwise.  Each denied comity not because the burden of parallel litigation was irrelevant, but because the defendant failed to show anything beyond that burden.  *NovaSparks SA v. EnyxFPGA*, 344 F. Supp. 3d 666, 678-79 (S.D.N.Y. 2018); *Acuren Inspection, Inc. v. Aboyoun*, 2019 WL 3997044, at *6 (D. Conn. Aug. 23, 2019).  Sensing this difficulty, Plaintiff suggests—without saying so—that it would be prejudiced if this Court granted comity here. In so doing, Plaintiff effectively claims prejudice "in the form of lost time and critical discovery."  *Kingstown*, 2020 WL 5350492, at *7.  That argument carries little weight where Plaintiff chose to file suit in Ontario, seeking essentially the same relief against the same Defendants arising from the same Transaction.  *See* Mot. 19; *SASOF*, 818 F. Supp. 3d at 591.

Even if this difference was relevant, courts have held this factor is neutral where two actions are filed in "close temporal proximity." *Monsoon Blockchain Storage, Inc. v. Magic Micro Co., Ltd.*, 2024 WL 3466796, at *6-7 (S.D.N.Y. July 19, 2024) (staying on international comity grounds where the prior parallel case had been filed seven months prior); *see also Ole Media Mgmt., L.P. v. EMI April Music, Inc.*, 2013 WL 2531277, at *5-6 (S.D.N.Y. June 10, 2013) (finding temporal sequence "neutral or close to it").[4]

### D.     The Forum Selection Clause Does Not Preclude International Comity.

Plaintiff claims that the Credit Agreement's New York forum selection clause is "presumptively controlling" and "dictates against abstention." Opp. 30. It is neither. International comity is an inherent power grounded in public considerations that parties cannot contract away. *See Oui Fin. LLC v. Dellar*, 2013 WL 5568732, at *10 (S.D.N.Y. Oct. 9, 2013) ("[P]rivate agreements as to choice of forum . . . must be subordinated to the 'overarching concerns' the comity doctrine addresses."). The Second Circuit has repeatedly recognized that a forum selection clause "does not preclude a court from granting comity where it is otherwise warranted." *Allstate Life Ins. Co. v. Linter Grp., Ltd.*, 994 F.2d 996, 1000 (2d Cir. 1993); *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 429 (2d Cir. 2005). And even if a forum selection clause were some sort of trump card (it is not), Plaintiff's argument still fails because the forum selection clause in the Credit Agreement is not applicable to CanCo, a party against whom Count II is alleged. PJ Mot. 11-16.

---

[4]    Plaintiff's cases (Opp. 32) are inapposite. *See Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 391 (S.D.N.Y. 2010) (first-filed factor neutral where the Canadian action was filed one month earlier and had not progressed significantly); *C.D.S., Inc. v. Zetler*, 198 F. Supp. 3d 323, 331-35 (S.D.N.Y. 2016) (giving weight to first-filed New York action only after extensive merits proceedings); *Schenker A.G. v. Societe Air France*, 2016 WL 1465353, at *3 (E.D.N.Y. Apr. 14, 2016) (preference for first-filed action did not apply in favor of comity where the foreign action was a defensive declaratory judgment filed to preempt domestic litigation and was far from resolution).

8

Plaintiff's caselaw is misplaced. In *Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*, 2015 WL 4940109, at \*2-4 (S.D.N.Y. Aug. 6, 2015), the forum selection clause played no part in the court's decision to deny comity, which was denied because judicial economy favored adjudicating the dispute in New York, the forum "at home with" the law governing the dispute. In *Mexico Infrastructure Finance, LLC v. Corp. of Hamilton*, 2019 WL 1206690, at \*4 (S.D.N.Y. Mar. 14, 2019), the court expressly acknowledged that "a New York forum-selection clause 'does not preclude a court from granting comity,'" but treated the clause as "presumptively controlling" because the defendant had failed to make a "strong argument in favor of deference" under the comity factors.

The existence of the forum selection clause in the Credit Agreement is irrelevant to the determination of whether to dismiss Count II on international comity grounds.

## II.   COUNT II SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLEAD IT WITH PARTICULARITY

Plaintiff concedes Rule 9(b) applies (Opp. 38) but fails to cite to any allegations in the Complaint where it pleads particularized facts supporting a "strong inference" that Defendants structured the Transaction to defraud creditors or constituting strong circumstantial evidence of conscious misbehavior or recklessness. *Carter v. Ralph Lauren Corp.*, 683 F. Supp. 3d 400, 424-25 (S.D.N.Y. 2023); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Even if Plaintiff could satisfy Rule 9(b)'s particularity requirement, its conflation of American and Canadian evidentiary standards independently dooms its fraud claim. *See* Opp. 40 (citing an Ontario trial court case). Federal pleading standards apply here, and while a single badge of fraud "may spur mere suspicion," it is "the confluence of several" which can "constitute conclusive evidence" of actual intent to defraud. *In re Tribune Co. Fraudulent Conv. Litig.*, 2017 WL 82391, at \*16 (S.D.N.Y. Jan. 6, 2017). Plaintiff pleads no such confluence.

A.      Plaintiff's Purported "Badges of Fraud" Are Insufficient.

Plaintiff contends that its allegations in the Complaint are sufficient because it has pleaded "at least seven badges" of fraud. Opp. 40. Plaintiff's alleged "badges" fall short. The Complaint describes the reorganization of a subsidiary that had yet to generate meaningful cash flows but required outside capital. Compl. ¶4. Those facts support a legitimate restructuring inference "at least as compelling" as Plaintiff's fraud theory. *See In re AlphaStar Ins. Grp. Ltd.*, 383 B.R. 231, 257 (Bankr. S.D.N.Y. 2008).

***Business Purpose.*** Plaintiff alleges that the Transaction lacked a legitimate business purpose because certain unnamed "advisors" "indicated" that the Transaction was "engineered to gain leverage in an upcoming restructuring negotiation." Opp. 45-46. The Complaint does not identify who spoke or what was said. *See Gao v. Yang*, 2022 WL 2193290, at * 2 (S.D.N.Y. June 17, 2022). It also ignores that the Transaction reflected a legitimate business purpose to create a structure designed to attract LEO investors. *See Trodale Holdings LLC v. Bristol Healthcare Invs. L.P.*, 2018 WL 2980325, at *5-6 (S.D.N.Y. June 14, 2018) (granting dismissal where transaction could have been "undertaken for legitimate business reasons").[5]

***Consideration.*** Plaintiff equates "no cash payment" with "no consideration" (Opp. 41-42) but the Complaint and Opposition make clear that Telesat Canada retained 38% of LEO Holdings, and the Transaction positioned LEO to raise external capital. Opp. 8; *see* Compl. ¶6. Those are

---

[5]      Plaintiff's "business purpose" authorities are inapposite. *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 738-39 (E.D.N.Y. 2015), involved a co-owner who siphoned corporate funds to personal accounts through unauthorized loans and cash transfers for direct self-enrichment. *RTC Mortg. Tr. 1995-S/N1 v. Sopher*, 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001), involved transfers that "occurred within weeks of [a company's] insolvency" and were undertaken "without regard to any plausible financial planning concerns" designed to prevent creditors from recovering on existing judgments. *Ontario Secs. Comm'n v. Camerlengo Holdings Inc.*, 2023 ONCA 93 ¶¶14-15, involved an individual transferring his family home to his wife shortly after incorporating a new business, where no consideration was paid and the transferor continued to treat the property as his own. *Nuove Ceramiche Ricchetti S.p.A. v. Mastrogiovanni*, 1988 CarswellOnt 184 (S.C.) ¶¶4, 9, 13, 24-25, involved a debtor secretly transferring all assets to a shell company mid-litigation while concealing the transfer during settlement negotiations.

cognizable forms of consideration.  *See, e.g.*, *In re IAC/InterActive Corp.*, 948 A.2d 471, 486 (Del. Ch. 2008) (describing a spinoff undertaken to "more easily attract business partners").   The stronger inference is that Defendants exchanged one form of value for another in the service of a broader financing strategy.[6]

**Asset Stripping.**  Plaintiff claims that Defendants transferred majority ownership of the Company's "crown-jewel asset," leaving little value behind (Opp. 42) merely repackages its breach of contract claim.  What's more, LEO Holdings was an existing unrestricted subsidiary excluded from the Credit Agreement's collateral guarantee requirements.  Mot. 5 n.5.  Plaintiff's authorities are materially different.  *See* Opp. 42.  *Drip Capital* involved liquidating all inventory for insider cash distributions.  348 F.R.D. at 548-49.  And *Ernst & Young Inc. v. Aquino*, 2021 ONSC 527 ¶¶142-43, did not involve asset stripping at all.  Those cases do not transform the transfer of unpledged equity in an unrestricted subsidiary into fraudulent transfer.

**Secrecy.**  Plaintiff's "secrecy" theory (Opp. 43) fails because it identifies no contractual duty to pre-announce the Transaction to its creditors.  *See Chiarella v. U.S.*, 445 U.S. 222, 235 (1980) ("nondisclosure" is not fraud "absent a duty to speak").[7]

---

[6]      Plaintiff's "consideration" cases are distinguishable.  In *U.S. Bank Trust Co., National Ass'n v. DISH DBS Corp.*, 2025 WL 2419978, at *13 (S.D.N.Y. Aug. 21, 2025), the court denied dismissal because the plaintiff alleged a systematic, multi-year scheme to "siphon [a company's] cash and most valuable assets" through a series of transactions, each of which involved the outright dissipation of assets to entities *personally* controlled by a single individual.  In *Anhui Aido Garment Co., Ltd. v. Stern*, 2025 WL 1663860, at *7 (S.D.N.Y. June 12, 2025), pre-existing judgment debtors diverted assets to evade collection.  *Drip Cap., Inc. v. JY Imports of NY Inc.*, 348 F.R.D. 536, 548-49 (E.D.N.Y. 2025), involved the liquidation of all inventory and cash for insider distributions, rendering the company defunct.

[7]      Plaintiff's authorities are distinguishable.  *SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*, 2013 WL 5366373, at *2, *9 (S.D.N.Y. Sept. 25, 2013), involved the secret transfer of *creditors' own merchandise* to an insider-owned entity on the same day as a UCC foreclosure auction.  In *Tommy Lee Handbags Manufacturing Ltd. v. 1948 Corp.*, 971 F. Supp. 2d 368, 381-83 (S.D.N.Y. 2013), the "secretive transaction" occurred on the same day as a public auction and involved creditors' pledged collateral.  In *Aquino*, the secrecy involved years of hiding payments behind "phony invoices" for "services that were never delivered."  2021 ONSC 527 ¶157.  Telesat publicly announced the Transaction the day it occurred.

***Misdirection.*** Plaintiff's "misdirection" theory also fails. Opp. 43-44. The alleged "chill" statement (Opp. 43) was made years before the Transaction, and the Complaint does not allege that the Transaction was contemplated then. That is impermissible fraud-by-hindsight, not particularized intent. *See Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).[8]

***Conflicts of Interest.*** Plaintiff's "conflicts of interest" theory does not establish motive. Opp. 44-45. Alleged share-price improvement and restructuring leverage are generalized corporate motives, not concrete personal benefits. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *see Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 157-58 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009) (holding insufficient allegations "that Defendants . . . leveraged [a company's] false financials and financial strength and debt ratings to finance growth"). The stronger inference is that any anticipated benefits flowed from legitimate corporate activities, not from a fraudulent scheme.[9]

***Imminent Liabilities and Insolvency***. Plaintiff's allegations concerning insolvency and upcoming maturities (Opp. 46) add nothing without particularized facts showing fraudulent intent. Financial distress often motivates restructuring; it does not convert restructuring into fraud. *See In re Vivaro Corp.*, 524 B.R. 536, 554-55 (Bankr. S.D.N.Y. 2015) (dismissing fraud claim where

---

[8]    Plaintiff cites *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, 528 F. Supp. 3d 219 (S.D.N.Y. 2021), *aff'd*, 49 F.4th 170 (2d Cir. 2022), and *Aquino*, both of which are irrelevant. *Madoff* involved a decades-long Ponzi scheme, the fabrication of trading and accounting records, and concealment of the absence of legitimate investment activity for years. 528 F. Supp. 3d at 225-28. *Aquino* involved injecting capital into a company specifically to disguise its true financial condition from creditors while simultaneously draining money through a clandestine false-invoicing scheme. 2021 ONSC 527 ¶157.

[9]    Plaintiff's authorities confirm this point. In *Amusement Industries, Inc. v. Midland Avenue Associates, LLC*, the individuals who approved the transfers were themselves "recipients of some of the transferred funds." 820 F. Supp. 2d 510, 532 (S.D.N.Y. 2011). In *Watson v. Riptide*, 2012 WL 383946, at *9 (S.D.N.Y. Feb. 7, 2012), the "corporate insiders" transferred company funds to themselves in the form of personal bonuses and salary increases. In *DISH*, an individual—who controlled and personally benefited from the entities on both sides of the transaction— was alleged to have "siphon[ed]" billions in personal value. 2025 WL 2419978, at *13. Here, no director personally received the transferred equity, which went to a corporate subsidiary.

only two badges, including insolvency, were alleged).  Upcoming maturities make restructuring more, not less, commercially reasonable.[10]

Plaintiff's fraud allegations are not as compelling as any opposing non-fraudulent explanation.  Plaintiff does not allege that the transferred equity was dissipated, concealed, placed beyond judicial reach, or routed through sham entities.  Because nearly every badge is missing, Count II must be dismissed under Rule 9(b).

## B.    CanCo's Rule 9(b) Motion Is Not Barred by Rule 12(g)(2).

Plaintiff's Rule 12(g)(2) objection fails.  CanCo's Rule 9(b) arguments were raised in a joint motion with Telesat Canada the same day CanCo filed its Rule 12(b)(6) motion.  Separate motions were filed because the moving Defendants differed.  Courts have rejected Plaintiff's reading of Rule 12(g)(2) where, as here, the successive motion was not the product of "dilatory or bad-faith conduct."  *In re Row NYC, LLC*, 2024 WL 61915, at *11 (Bankr. S.D.N.Y. Jan. 4, 2024).

Plaintiff's objection also fails because CanCo could reassert its Rule 9(b) arguments in a Rule 12(c) motion.  *See, e.g.*, *Leighton v. Poltorak*, 2018 WL 2338789, at *1 (S.D.N.Y. May 23, 2018) (rejecting Rule 12(g)(2) challenge because the defendant would otherwise be free "to make an essentially identical motion pursuant to Rule 12(c) after filing their answer"); Fed. R. Civ. P. 12(g)(2), 12(h)(2)(B) (excepting from Rule 12(g)(2) "a motion under Rule 12(c)").

---

[10]    Plaintiff's cited cases are irrelevant.  The court in *DISH* declined to resolve factual disputes about insolvency on a motion to dismiss, but in considering the badges of fraud, the court determined that plaintiff sufficiently alleged insolvency where the factual allegations described a systematic, multi-year scheme involving dozens of individual fraudulent transactions and caused the personal enrichment of a controlling shareholder. 2025 WL 2419978, at *1, 14-16. In *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 304, 307 (S.D.N.Y. 2005), the transferor created a family trust weeks after being sued by a business partner, transferred substantially all personal assets for no consideration, retained control of those assets, and continued stripping assets during pending litigation.

13

## **CONCLUSION**

For these reasons and those stated in the Motion, the Court should dismiss, or in the alternative stay, Count II.

Dated: New York, New York          KIRKLAND & ELLIS LLP
      June 1, 2026

                                         */s/ Josh Greenblatt*
                                         Josh Greenblatt, P.C.
                                         Jeffrey R. Goldfine, P.C.
                                         Kaitlin P. Sheehan
                                         601 Lexington Avenue
                                         New York, NY 10022
                                         (212) 446-4800 (telephone)
                                         josh.greenblatt@kirkland.com
                                         jeffrey.goldfine@kirkland.com
                                         kaitlin.sheehan@kirkland.com

                                         *Attorneys for Defendants Telesat GEO Inc. (f/k/a Telesat Canada) and Telesat LEO CanHold Corporation*

15

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 7.1(c)'s word count limit because it contains 3,497 words, excluding the sections exempted by Rule 7.1(c). In making this certification, I relied on the word count of the word-processing program used to prepare this document.

*/s/ Josh Greenblatt*
Josh Greenblatt