October 9, 2026

**By ECF**

Hon. Sarah L. Cave
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1670
New York, NY 10007

Re: *Wilmington Savings Fund Soc'y, FSB* v. *Telesat Canada*, No. 1:26-cv-1346 (S.D.N.Y.)

Dear Judge Cave:

The parties write to update the Court, pursuant to its Order (ECF 105), about discovery ahead of the October 13 conference:

- As of September 15, Plaintiff produced 67,615 documents. Since then, Plaintiff produced 5,731 documents.
- As of September 15, Defendants produced 59,090 documents. Since then, Defendants produced 6,348 documents.
- The parties have served privilege logs.
- Plaintiff and Defendants have each raised issues with the other side's production and privilege logs, some of which they continue to discuss, and others are described below.

## I. Plaintiff's Statement

***Production and Privilege Log Deficiencies.*** Defendants' productions and privilege logs are *severely* deficient; the proof is in the numbers. Plaintiff, whose conduct is *not at issue*, has produced 73,346 documents and withheld 9,401. Yet Defendants—who have all the documents about the Transaction and businesses at issue—have produced merely 65,438 (including many junk documents) and logged *over 24,755*. Two issues implicate virtually all of Defendants' productions:

*First*, there are glaring gaps in documents about important topics. For example:

(1) Defendants produced financial data and final work product of Stout—a firm retained to opine that Telesat Canada was solvent post-Transaction. But the productions are almost completely devoid of substantive communications concerning those data and work product, or drafts thereof. [redacted]

[redacted]

(2) Valuation Research Corporation, retained by the Special Committee to opine on solvency, [redacted]. Defendants' productions contain just one letter, one email, and one set of Special Committee minutes [redacted].

(3) MHR owned ~36% of Telesat Corporation during the relevant period and had three Telesat Board appointees. Defendants facilitated production from MHR. Yet MHR produced only *939* documents—few to none relate to the purpose, planning, or structure of the Transaction, or analysis of MHR's investment.

*Second*, Defendants made unjustified privilege designations orders-of-magnitude beyond the issues they raise about Plaintiff. For example, Defendants often withheld all family members simply because one is claimed to be privileged, and withheld numerous business communications, letters from Paul, Weiss litigators, pre-existing financial data, business plans, and executed contracts. Defendants withheld communications with Telesat's auditor that are non-privileged as a matter of law—[redacted]. Defendants' logs are also often unclear—for instance, despite insisting on metadata logs in which subject lines often provide the only hint of a communication's substance, Defendants redacted many subject lines.

Plaintiff has raised these issues with Defendants in detail. Defendants should be required to respond in detail by October 16, 2026. Plaintiff respectfully requests that the Court schedule another conference the week of October 19, 2026.

***PJT Collection.*** Both sides' productions generally ended on the date this case was filed, but Defendants stopped their production from PJT, Telesat's financial advisor, on the date of the Transaction. Yet on August 26, Plaintiff emailed Defendants confirming Plaintiff was running searches up until the lawsuit date—including for its own financial advisors—and stated: "[w]e assume Defendants are doing the same for all of their searches, but please let us know if not." Defendants did not respond that they were running a narrower search for PJT. The earlier email chains cited by Defendants focused on search terms and provide no excuse for Defendants ignoring this message. PJT's role continued after the Transaction, [redacted]

***Common-Interest Privilege.*** The parties dispute whether common-interest privilege applies to communications between the Special Committee and the rest of Telesat, ECF 83 at 2, and whether Telesat Corporation and Telesat Canada—effectively Transaction counterparties—had any common interest. There is no common interest as a matter of law. The parties have

corresponded for months, met-and-conferred, and reached impasse. Per the Court's instruction, Plaintiff requests a briefing schedule. 8/17 Tr. at 16:1-17:2.

**Responses to Defendants**

***Investment Committee ("IC") Materials.*** The Court denied Defendants' request for IC memos without prejudice to renewal if Plaintiff's production was substantively deficient. 9/10 Tr. at 38:5-13. Defendants have identified nothing missing from Plaintiff's production that requires IC memos, and instead attempt to undermine this Court's ruling through a technicality—Plaintiff's good-faith production of family members, which are overwhelmingly non-substantive transmittal emails. The Court should follow its prior ruling.

***Text Messages.*** Defendants never raised this issue before complaining about it in this letter. Had Defendants done so, they would know that the Directing Lender and WSFS custodians did not text about Telesat. Plaintiff has asked Evercore and Lincoln's counsel for any text messages.

**II. Defendants' Statement**

**Defendants' responses:**

- **Plaintiff's Manufactured Deficiencies.** Plaintiff continues to manufacture disputes and asks the Court to micromanage issues that the parties are still negotiating.

The document production numbers are misleading. Plaintiff's productions are inflated with automated emails, mass-mailers, and junk files, which comprise approximately 17,000 of the 67,000 documents Plaintiff produced. Plaintiff's complaints about the number of documents Defendants have produced are unfounded. Defendants have produced the non-privileged, responsive documents that hit on the agreed-upon search terms for the agreed-upon date ranges and provided corresponding privilege logs. There is no basis for Plaintiff's deficiency claims.

**Stout.** Defendants have produced 876 documents from Stout. Defendants disagree that anything is deficient, but have advised Plaintiff that they are looking into the items raised.

**VRC.** Defendants have produced documents discussing VRC and logged privileged information pursuant to the agreed-upon search terms and protocols. Plaintiff has also subpoenaed VRC, which is still producing documents.

**MHR.** Defendants have produced documents and logged privileged information pursuant to the agreed-upon search terms and protocols for MHR. It is unclear what basis Plaintiff has to claim deficiency, but Defendants understand that MHR's counsel has advised Plaintiff that they are looking into the items raised.

Plaintiff attacks Defendants' privilege logs, but nearly every deficiency Plaintiff attributes to Defendants is a practice Plaintiff itself follows. Defendants raised this with Plaintiff. Exs. 9, 10. Those inquiries remain unanswered. This is not a one-sided issue. Nor is it ripe. Defendants

have told Plaintiff they are preparing a response. Plaintiff asks that the Court require Defendants to respond "in detail" by October 16; if any such deadline is imposed, it should also apply to Plaintiff.

- **Plaintiff's Request For Additional PJT Documents Should Be Denied.** Prior to undertaking review of documents collected from PJT custodians, Defendants repeatedly advised Plaintiff as to their search protocol, including the date range. Plaintiff never objected to the disclosed date range and instead agreed on August 11. Ex. 11. Plaintiff now claims the prior agreement was limited to search terms. The record demonstrates the opposite. Plaintiff questioned the date ranges for other custodians, but not PJT. Plaintiff's demand comes too late.

- **Common-Interest Privilege.** A special committee convened to evaluate a transaction for fairness can share a common legal interest with the board that appointed it. Plaintiff identifies no authority holding otherwise. Defendants assert no blanket privilege and have instead made individual withholdings. Defendants have reviewed Plaintiff's objections, made rolling productions, and continue to work through remaining items. Briefing is thus premature because the parties remain in the meet-and-confer process.

**Defendants raise the following:**

- **Slipsheeting of responsive, non-privileged documents.** Plaintiff unilaterally decided to withhold 78 responsive and non-privileged documents (77 are part of otherwise responsive families) and replaced those documents with slipsheets labeled "Investment Committee Materials." There is no basis for unilaterally withholding responsive material and relevant evidence. Plaintiff's egregious misconduct runs afoul of the fundamental tenets upon which discovery is based (including FRCP 26) and:

(i) The ESI Order, which requires production of whole families whenever any parent or child is responsive and bars any party from withholding or redacting a family member on responsiveness grounds (ECF 46 §§ I(B)(12), VIII(A)); and

(ii) Plaintiff's responses to discovery requests (ECF 90-1 at 18-20, 21-24, 26-27).

On October 5, Defendants raised this issue with Plaintiff. Plaintiff refused to correct its improper withholding, claiming that its actions were expressly sanctioned by the Court.

Plaintiff is wrong. The issue presented at the September 10 conference related to Defendants' request that Plaintiff conduct a ***standalone*** collection of investment committee materials. ECF 99 (Hr'g Tr. 24:21-26:3). The Court noted that in the "interest of time," Plaintiff should "complete [its] production" and invited Defendants to raise their request for a standalone collection of investment committee memos "at the next conference." *Id.* at 38:1-13. Nothing the parties or the Court said—at the conference or in its subsequent order (ECF 91)—superseded the ESI Order or authorized Plaintiff to withhold responsive, non-privileged documents out of otherwise responsive families.

Plaintiff should be ordered to produce these documents immediately. These documents are clearly relevant and responsive—that they are contained in otherwise responsive non-privileged families evidences this. And as explained previously, these are important documents detailing the Directing Lenders' own valuations of Telesat's assets, the central issue in this case. ECF 99 (Hr'g Tr. 25:2-30:10).

- **Failure to Produce Text Messages.** Plaintiff agreed to collect and produce documents and communications from thirteen custodians. Plaintiff represented on August 11 that its custodial collections followed "custodial interviews," yet despite Defendants' repeated requests, it has never identified which data sources—including phones—it collected for any custodian.

Plaintiff has produced ***zero*** text messages. It defies logic that in today's world none of Plaintiff's custodians sent a single responsive, non-privileged text message.

Defendants ask Plaintiff to produce all responsive, non-privileged text messages or provide, for each custodian, a basis for failing to do so.

Dated: October 9, 2026

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ William A. Clareman*
Brian S. Hermann
William A. Clareman
Joseph M. Graham
Paul A. Paterson

1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
bhermann@paulweiss.com
wclareman@paulweiss.com
jgraham@paulweiss.com
ppaterson@paulweiss.com

*Attorneys for Plaintiff*
*Wilmington Savings Fund Soc'y, FSB*

Dated: October 9, 2026

KIRKLAND & ELLIS LLP

By: */s/ Josh Greenblatt*

Josh Greenblatt, P.C.
Jeffrey R. Goldfine, P.C.
Kaitlin P. Sheehan

601 Lexington Avenue
New York, NY 10022
(212) 446-4800
josh.greenblatt@kirkland.com
jeffrey.goldfine@kirkland.com
kaitlin.sheehan@kirkland.com

*Attorneys for Defendants*
*Telesat GEO Inc. (f/k/a Telesat Canada) and*
*Telesat LEO CanHold Corporation*