# EXHIBIT 9

**From:** Sheehan, Kaitlin P.
**To:** Clareman, William; Sager, William; *ppaterson@paulweiss.com; Keller, Andrea M; Siegel, Max
**Cc:** Greenblatt, Josh; Goldfine, Jeffrey Ross; Yeager, Eric; Smith, Palmer; Martin, Shelby
**Subject:** WSFS v. Telesat: Plaintiff"s Privilege and Redactions Logs
**Date:** Thursday, September 24, 2026 6:49:08 PM

Counsel:

We write regarding deficiencies identified across several of the privilege logs Plaintiff served in connection with the above-captioned matter. Defendants' concerns are organized by log below.

**2026.09.15 WSFS_DIR-LEND Privilege Log**

- **Entry Claiming Attorney-Client Privilege Without Identifiable Attorney Participation**
  - **Entry Nos. 114, 154, 156, 163, 171, 175, 177, 224, 239, 244, 286, 287, 288, 335, 377, 378, 379, 446, 468, 492, 493, 496, 518, 552, 553, 562, 579, 598, 602, 603, 611, 614, 620, 641, 642, 652, 685, 695, 696, 725, 732, 733, 734, 735, 736, 737, 743, 756**. These documents and communications were withheld on the basis of attorney-client privilege (and, in some instances, also the work product doctrine) with no identified attorney present. For example, Entry No. 154, titled "Telesat Govt Relations Narrative 5.14.2026 v2 pc.docx," was authored by Riyaz Lalani, who Defendants understand is an employee of Gagnier Communications, a public relations firm. By way of further example, Entry Nos. 552 and 553 reflect internal SoundPoint Capital email communications with no identifiable attorney participation. These entries must either be supplemented with descriptions sufficient to satisfy Rule 26(b)(5)(A), produced in their entirety, or produced with redactions limited to genuinely privileged material.

- **Potential Third-Party Involvement and Waiver**
  - *Gagnier Communications*. **Entry Nos. 154, 303, 304, 310, 311, 312, 313, 314, 319, 320, 328, 329, 330, 331, 332, 333, 334, 360, 361, 362, 366, 380, 381, 382, 389, 403, 410, 415, 417, 420, 451, 457, 480, 487, 488, 489, 490, 491, 494, 498, 514, 556, 572, 591, 597, 599, 608, 625, 638, 681, 682, 683, 688**. These documents and communications either include recipients at @gagnierfc.com, including dg@gagnierfc.com, rlalani@gagnierfc.com, and Telesat@gagnierfc.com (*see, e.g.,* Entry Nos. 262, 303, 304), or reflect documents authored by Gagnier personnel (i.e., Riyaz Lalani) (*see, e.g.*, Entry No. 154). Gagnier is a strategic communications and public relations firm. The inclusion of Gagnier personnel on communications designated as privileged raises questions about whether the documents or communications reflect legal advice, were made for the purpose of obtaining or providing legal advice, or whether their inclusion

constitutes a third-party waiver of privilege. Please explain Gagnier's role and the basis for maintaining privilege over documents prepared by Gagnier personnel and communications shared with the same.

- *Global Public Affairs*. **Entry Nos. 303, 304, 310, 311, 312, 313, 314, 319, 320, 328, 329, 330, 331, 332, 333, 334, 360, 361, 362, 366, 380, 381, 382, 389, 403, 410, 415, 417, 418, 420, 432, 451, 457, 480, 487, 488, 489, 490, 491, 494, 498, 514, 556, 572, 591, 597, 599, 608, 625, 638, 687, 688, 694, 698, 704, 727, 728, 729, 730, 731, 740, 741, 742**. These communications each include recipients at @globalpublic.com. Global Public Affairs is a government relations and strategic communications firm. The inclusion of Global Public Affairs personnel on communications designated as privileged raises questions about whether the documents or communications reflect legal advice, were made for the purpose of obtaining or providing legal advice, or whether their inclusion constitutes a third-party waiver of privilege. Please explain Global Public Affairs' role and the basis for maintaining privilege over communications shared with Global Public Affairs personnel.

- *Sussex Strategy Group*. **Entry No. 175**. This is a document titled "Telesat Govt Relations Narrative (06.22.26)(300945891.2).docx" that was authored by Devin McCarthy, an employee of Sussex Strategy Group. Sussex is a government relations and strategic communications firm. In addition to being authored by a government relations firm employee, the document title is indicative of efforts and political strategy rather than legal advice, and the work product designation is suspect given that it is unclear how government relations efforts are connected to this litigation. Please explain Sussex Strategy Group's role and the basis for maintaining privilege over a document created by Sussex Strategy Group personnel.

- *Third-Party Law Firms*. **Entry Nos. 36, 37, 38, 39, 43, 44, 45, 46, 47, 49, 179, 181, 182, 194, 195, 223, 430, 431, 441, 449, 450, 645, 646, 647, 648, 650, 651, 746, 747**. These documents and communications contain metadata suggesting they were sent to, received by, or prepared by law firms other than Paul Weiss. For example, Entry Nos. 36, 37, and 39 are titled "CASSELS - Responses to Questions re Telesat (May 2025).docx" and the author is listed as Cassels Brock & Blackwell LLP, a law firm other than Paul Weiss. Likewise, Entry Nos. 43 and 45 reflecting documents titled "Memorandum Re Telesat - May 14, 2025.pdf" were authored by Lawson Lundell LLP, not Paul Weiss. Please clarify the involvement of the law firms reflected in the above-listed entries and the basis for the assertion of privilege over these documents.

**Non-Legal Subject Matter: Documents Indicative of PR, Lobbying, or Political Strategy Rather Than Legal Advice**

- **Entry Nos. 122, 154, 175, 261, 262, 315, 316, 317, 318, 321, 323, 324, 325, 326, 327, 359, 534, 562, 637, 678, 687**. The metadata for these documents and communications suggests that they concern public relations, political strategy, or government relations rather than legal advice. For example, Entry No. 122 is a document titled "Telesat - Updates - PR Matters_Timing.msg," suggesting that it concerns public relations and not legal advice. By way of further example, Entry Nos. 323, 324, 325, 326, and 327 reflect the subject line, "RE: Telesat Media Campaign Clearance," and are designated as attorney-client privilege despite the metadata reflecting no attorney involvement and suggesting that the information contained therein concerns media or public relations strategy and not legal advice. Please explain the basis for the privilege and, where asserted, any work product designations.

**2026.09.18 WSFS and Directing Lenders' Privilege Log**

- **Entry Claiming Attorney-Client Privilege Without Identifiable Attorney Participation**
  - **Entry Nos. 12, 18, 27, 28, 31, 62, 89, 90, 91, 92, 93, 148, 157, 194, 316, 345, 376, 390, 416, 469, 470, 479, 540, 602, 687, 747, 760, 768, 809, 888, 933, 934, 960, 961, 962, 963, 964, 965, 968, 970, 972, 975, 1005, 1006, 1007, 1008, 1014, 1064, 1117, 1153, 1162, 1172, 1194, 1216, 1245, 1252, 1612, 1613, 1614, 1616, 1617, 1618, 1620, 1621, 1622, 1624, 1625, 1626, 1628, 1629, 1630, 1632, 1633, 1634, 1636, 1637, 1638, 1656, 1717, 1810, 1893, 1895, 1896, 1897, 1899, 1900, 1901, 1916, 2011, 2019, 2023, 2027, 2031, 2035, 2039, 2043, 2056, 2057, 2151, 2152, 2153, 2154, 2155, 2247, 2274, 2372, 2421, 2428, 2438, 2456, 2457, 2468, 2504, 2505, 2512, 2545**. These documents and communications were withheld on the basis of attorney-client privilege (and, in some instances, also the work product doctrine) with no identified attorney present. These documents cannot be withheld without explanation. These entries must either be supplemented with descriptions sufficient to satisfy Rule 26(b)(5)(A), produced in their entirety, or produced with redactions limited to genuinely privileged material.
- **Potential Third-Party Involvement and Waiver**
  - *Gagnier Communications*. **Entry Nos. 335, 418, 432, 482, 544, 565, 636, 694, 695, 696, 698, 704, 723, 724, 727, 728, 729, 730, 731, 740, 741, 742, 771, 772, 775, 776, 777, 778, 779, 1903, 1904, 1906, 1907, 1975, 1976, 1977, 1978, 1979, 1980, 1981, 1987, 1988, 2016, 2017, 2018, 2020, 2021, 2022, 2024, 2025, 2026, 2028, 2029, 2030, 2032,**

**2033, 2034, 2036, 2037, 2038, 2040, 2041, 2042, 2044, 2045, 2046, 2047, 2110, 2111, 2112, 2113, 2117, 2118, 2119, 2120, 2121, 2122, 2123, 2124, 2125, 2126, 2127, 2137, 2139, 2141, 2143, 2145, 2147, 2149, 2156, 2159, 2162, 2165, 2168, 2171, 2174, 2217, 2218, 2219, 2222, 2225, 2228, 2231, 2234, 2237, 2240, 2243, 2246, 2248, 2251, 2254, 2259, 2262, 2265, 2275, 2278, 2281, 2284, 2287, 2290, 2311, 2314, 2317, 2320, 2323, 2326, 2329, 2337, 2338, 2339, 2340, 2363, 2364, 2365, 2366, 2369, 2370, 2371, 2373, 2374, 2375, 2376, 2380, 2381, 2382, 2383, 2384, 2385, 2386, 2387, 2389, 2390, 2391, 2393, 2394, 2395, 2396, 2397, 2398, 2399, 2439, 2444, 2447, 2448, 2449, 2450, 2451, 2452, 2455, 2458, 2488, 2489, 2490, 2491, 2492, 2493, 2494, 2499, 2500, 2523, 2593**. As above, these documents and communications either include recipients at @gagnierfc.com or reflect documents authored by Gagnier personnel, the inclusion of which raises questions about whether the documents or communications reflect legal advice, were made for the purpose of obtaining or providing legal advice, or whether their inclusion constitutes a third-party waiver of privilege.

- *Global Public Affairs*. **Entry Nos. 305, 315, 771, 772, 775, 776, 777, 778, 779, 2444, 2447, 2448, 2449, 245, 2451, 2452, 2455, 2458, 2523**. As discussed above, these communications include recipients at @globalpublic.com, the inclusion of which raises questions about whether the documents or communications reflect legal advice, were made for the purpose of obtaining or providing legal advice, or whether their inclusion constitutes a third-party waiver of privilege.

- *Third-Party Law Firms*. **Entry Nos. 800, 1193, 1195, 1218, 1219, 1244, 1251, 1253, 1255, 1256, 1258, 1383, 1384, 1406, 1422, 1425, 1426, 1429, 1431, 1437, 1439, 1445, 1447, 1453, 1455, 1461, 1463, 1469, 1471, 1477, 1479, 1487, 1489, 1495, 1497, 1503, 1505, 1511, 1513, 1519, 1521, 1527, 1529, 1577, 1578, 1579, 1587, 1589, 1641, 1655, 1827, 1891, 1982, 2008, 2009, 2012, 2013, 2014, 2015, 2055, 2114, 2116, 2128, 2130, 2131, 2132, 2133, 2134, 2135, 2136, 2295, 2296, 2332, 2367, 2368, 2377, 2378, 2379, 2388, 2392, 2506, 2524, 2525, 2526, 2527, 2528, 2529, 2530, 2531, 2532, 2544, 2546, 2547, 2548, 2551, 2553, 2554, 2555, 2556, 2557, 2559, 2561, 2562, 2563, 2564**. The documents and communications contain metadata indicating that they were sent to, received by, or prepared by law firms including, but not limited to, Cassels (*see* Entry No. 800), Akin (*see* Entry No. 2524), Goodmans (*see* Entry No. 1578), and Pryor Cashman (*see* Entry No. 1255)—not Paul Weiss. Please clarify the involvement of the law firms reflected in the above-listed entries and the basis for the assertion of privilege over these documents.

- **Non-Legal Subject Matter: Documents Indicative of PR, Lobbying, or Political Strategy**

**Rather Than Legal Advice**

- **Entry Nos. 89, 90, 92, 93, 148, 156, 2137, 2139, 2141, 2143, 2145, 2147, 2149, 2217, 2218, 2219, 2222, 2225, 2228, 2231, 2234, 2237, 2246, 2248, 2251, 2254, 2259, 2262, 2265, 2275, 2278, 2281, 2284, 2287, 2290, 2432, 2433, 2434, 2435**. Again, the metadata for these documents and communications suggests that they concern public relations, political strategy, or government relations rather than legal advice. Indeed, many of these documents have subjects or file names that suggest they do not contain legal advice. For example, Entry No. 156 is a document titled "Telesat Govt Relations Narrative (05.27.26)_V5 clean3 - SUSSEX SPC.docx," suggesting that it concerns government relations and not legal advice. This document was also authored by Sussex Strategy Group employee, Devin McCarthy. Further, Entry No. 2137 is an email thread titled, "Telesat - Updates - PR Matters / Timing," again indicating that the content is representative of non-privileged public relations information and related logistics.

**2026.09.15 WSFS_DIR-LEND Redaction Log & 2026.09.18 WSFS_DL Redaction Log**

- **Emails Claiming Attorney-Client Privilege Without Identifiable Attorney Participation**. There are numerous entries representing email communications among personnel of a single Directing Lender entity with no attorney identifiable as a sender, recipient, or copy recipient. For example:

  - **Entry No. 146 (DIR-LEND-00025220)** is a Microsoft Teams Chat from Vincent Shen (vshen@soundpointcap.com) to approximately 40 other SoundPoint Capital personnel. Upon review, the substance of the thread appears to concern public valuations of Telesat and reporting concerning the same. As such, it is unclear how any information contained therein is subject to the attorney-client privilege. We would appreciate clarity to that effect.

  - **Entry No. 156 (DIR-LEND-00023048)** is an email from Andrew Bostick of SoundPoint Capital (abostick@soundpointcap.com) to Brian McHugh, Jane Lawrence, Sameer Pandhi, Gunther Stein, and Garrick Stannard, all SoundPoint personnel, with the subject line "Telesat Ad Hoc Call_4.4.24." The redacted information appears under the subheading, "Financial Advisor:".

  - **Entry No. 183 (DIR-LEND-00024516)** is another email from Andrew Bostick to Garrick Stannard. The subject line is "Telesat steerco 5.24.24."

  - **Entry No. 193 (DIR-LEND-00024539)** is another email from Andrew Bostick to Gunther

Stein, Brian McHugh, Jane Lawrence, Sameer Pandhi, and Garrick Stannard. The subject line is "RE: Telesat Media Campaign" and contributions from Messrs. Bostick and Stein have been redacted in full.

Please explain how the attorney-client privilege attaches to such communications absent any identified attorney participation.

Finally, all examples provided above are illustrative, and we expect Plaintiff to remedy any improper assertions of privilege as to their entire production. Defendants reserve all rights.

Thanks,
Kaitlin

**Kaitlin P. Sheehan**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3417 **M** +1 646 265 0660
**F** +1 212 446 4900

kaitlin.sheehan@kirkland.com